**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALAIN SPIRA.

*Plaintiff,*

-vs.-

CVT PREPAID SOLUTIONS, INC.,
DOLLAR PHONE CORP., DOLLAR
PHONE SERVICES, INC., DOLLAR
PHONE ENTERPRISES, INC., DOLLAR
PHONE ACCESS INC., EPANA
NETWORKS, INC., LOCUS
TELECOMMUNICATIONS, INC.,
TOTAL CALL INTERNATIONAL, INC.,
STI PHONE CARD, INC., STI PREPAID,
LLC, FIND & FOCUS ABILITIES, INC.,
VOIP ENTERPRISES, INC., TELCO
GROUP, INC., and JOHN DOES 1-100,

*Defendants.*

<u>**NOTICE OF REMOVAL**</u>

Index No. 08 CV 1998
(Sullivan, J.)
ECF CASE

**TO THE UNITED STATES DISTRICT COURT OF THE SOUTHERN
DISTRICT OF NEW YORK:**

Defendants Dollar Phone Services, Inc., Dollar Phone Enterprises, Inc., Dollar

Phone Corporation, and Dollar Phone Access, Inc. (collectively, "Dollar Phone"),

through their undersigned counsel, respectfully provide notice of the removal to this

Court of a civil action filed in the Supreme Court of the State of New York, Bronx

County, captioned *Spira v. CVT Prepaid Solutions, Inc., et al.*, Index No. 301164/08.

<u>**GROUNDS FOR REMOVAL**</u>

1.      Defendants remove this action pursuant to 28 U.S.C. § 1441(a).  This

Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1332 (as amended),

1446, and 1453.  Specifically, this Court has jurisdiction over this putative class action

under the recent amendments by the Class Action Fairness Act of 2005 ("CAFA") to 28

U.S.C. § 1332 *et seq.* because (1) the citizenship of at least one putative class member is different from that of at least one defendant; (2) the putative class action consists of at least 100 putative class members; and (3) the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs.[1] *See* Pub. L. 109-2, 119 Stat. 4 (codified as amended at 28 U.S.C. § 1332 *et seq.*)

### A.    Diversity of Citizenship

2.    CAFA requires only minimal diversity, *i.e.*, that "any member of a class of plaintiffs is a citizen of a State different from any defendant," or "any member of a class of plaintiffs is a citizen of a State and any defendant is a . . . citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2)(A) & (C) (as amended). Here, this requirement is met because there is diversity between the named plaintiff, Alain Spira, and defendants Locus Telecommunications, Inc ("Locus") and Total Call International, Inc. ("Total Call").

3.    According to the face of the complaint, Plaintiff Spira was, at the time of the filing of the Complaint, and still is, a resident of the Bronx, New York, and accordingly, a citizen of the State of New York. *See* Class Action Complaint ("Compl.") ¶ 8.[2]

4.    According to the face of the complaint, Defendant Locus was, at the time of the filing of the Complaint, and still is, a corporation organized under the laws of the State of Delaware and with its principal place of business in New Jersey and accordingly, a citizen of the States of Delaware and New Jersey. *See* 28 U.S.C. § 1332(c) ("a

---

[1] Removal to this Court is based upon the allegations in the Complaint. Dollar Phone does not concede, and expressly preserves all rights and objections with respect to, the allegations that this action properly has been brought, or may be prosecuted as, a class action.

[2] Moreover, CAFA's limitations on the removal of statewide class actions do not apply. Upon information and belief, at the time of the filing of the Complaint, less than two-thirds of the members of the proposed plaintiff class in the aggregate were citizens of New York, the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4).

corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); Compl. ¶ 12.

5.     Furthermore, according to the face of the complaint, Defendant Total Call, was at the time of the filing of the Complaint, and still is, a corporation organized under the laws of the State of California and with its principal place of business in California and accordingly, a citizen of the State of California. *See* 28 U.S.C. § 1332(c); Compl. ¶ 13.

6.     Thus, because there is diversity between Spira, a citizen of New York, and Locus a citizen of the States of Delaware and New Jersey, and because there is diversity between Spira, and Total Call, a citizen of the State of California, the minimal diversity requirements of CAFA are satisfied. *See* 28 U.S.C. § 1332(d)(2)(C).

7.     Moreover, this action is removable under CAFA notwithstanding the fact that one or more of the other defendants are citizens of New York, the state in which the action was brought. *See id.* § 1453(b) ("a class action may be removed . . . without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants").

**B.     Number of Members in the Proposed Class**

8.     CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100. *Id.* § 1332(d)(5)(B) (as amended). Plaintiff brings this action on behalf of all "consumers who purchase prepaid telephone calling cards." Compl. ¶ 1. Furthermore, according to the Complaint, "[t]here are thousands of users of Defendants' calling cards located throughout the State of New York and the

United States." *Id.* ¶ 24(a). Accordingly, based upon the allegations in the Complaint, the requirement that the number of members in the putative class be 100 or more is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B) (as amended).

    **C.**    <u>**Amount in Controversy**</u>

9.    CAFA requires that the "aggregate[]" "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(2) & (6) (as amended). Plaintiff seeks extensive relief on behalf of plaintiff and the proposed class members for alleged misconduct "causing customers to lose more than $1 million a day -- in other words, to be defrauded each year by hundreds of millions of dollars." Compl. ¶ 2. Thus, the aggregated amount sought by Plaintiff, based on the allegations in the Complaint, is at least $5 million, exclusive of interest and costs. Accordingly, the amount in controversy for federal diversity jurisdiction clearly is met. *See* 28 U.S. C. § 1332(d)(2) & (6) (as amended).

<u>**PROCESS, PLEADINGS, OR ORDERS SERVED**</u>

10.    The Summons with Notice and Class Action Complaint, annexed hereto as Exhibit A, were received by Dollar Phone at 232 Broadway, Brooklyn New York 11211 on or about February 26, 2008.[3]

11.    No other process, pleading, or order has been served on Dollar Phone in this action.

12.    Dollar Phone has not answered or moved with respect to the Complaint, and Dollar Phone's time to do so has not yet expired.

---

[3] Dollar Phone does not concede, and expressly reserves, all rights to object to, and defenses to, the Complaint, including but not limited to objecting to service of process.

## NOTICE OF REMOVAL TIMELY FILED

13.    Removal of this case to this Court is timely.  Pursuant to 28 U.S.C. §

1446(b), a Notice of Removal must be filed within 30 days of service of a copy of the

initial pleading setting forth the claims for relief upon which the action is based.  *See*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (holding

that thirty-day time period under removal statute begins to run from the date of formal

service).  Dollar Phone received the Summons with Notice and Complaint by personal

service or about February 26, 2008.  Accordingly, this Notice of Removal is timely filed.

14.    A copy of this Notice of Removal is being filed with the Clerk of the

Supreme Court of the State of New York in and for Bronx County and is being served on

counsel of record.  *See* 28 U.S.C. § 1446(a) & (d).

Dated: February 28, 2008
       New York, New York

                                          SCHLAM STONE & DOLAN LLP


                              By:  _____
                                   Jeffrey M. Eklender
                                   David J. Katz
                                   26 Broadway, 19th Floor
                                   New York, NY  10004
                                   (212) 344-5400 (telephone)
                                   (212) 344-7677 (facsimile)




TO:    Weiss & Lurie
       551 Fifth Avenue
       New York, New York 10176
       (212) 682-3025 (telephone)
       (212) 682-3010 (facsimile)

C 198—Summons with Notice, Supreme Court.
Personal or Substituted Service, 1-79

© 1973 BY JULIUS BLUMBERG, INC., PUBLISHER
82 WHITE STREET, NEW YORK, N.Y. 10013

**Supreme Court of the State of New York**
**County of** Bronx

Index No. 301164-08

Plaintiff(s) designates

Bronx

County as the place of trial

ALAIN SPIRA,

The basis of the venue is
Plaintiff's place
of residence

Plaintiff(s)

**Summons with Notice**

against

Plaintiff(s) reside(s) at

CVT. PREPAID SOLUTIONS, INC., DOLLAR PHONE CORP,
DOLLAR PHONE SERVICES, INC., DOLLAR PHONE
ENTERPRISES, INC., DOLLAR PHONE ACCESS, INC.,
EPANA NETWORKS, INC., LOCUS TELECOMMUNICATIONS,
INC., TOTAL CALL INTERNATIONAL, INC., ** Defendant(s)

5245 Blackstone
Riverdale, NY 10471
County of Bronx

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's
Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days
after the service is complete if this summons is not personally delivered to you within the State of New York); and in
case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated, February   , 2008

Defendant's Address: SEE ATTACHED SERVICE LIST

WEISS & LURIE

Attorney(s) for Plaintiff(s)
Office and Post Office Address

Notice: The nature of this action is violation of
GBL 349-50 and breach of contract
and related issues.
The relief sought is

551 Fifth Avenue
New York, NY 10176
(212) 682-3025
(212) 682-3010 (Fax)

declaration of rights and injunction

Upon your failure to appear, judgment will be taken against you by default for the sum of $
with interest from                                          and the costs of this action.

** STI PHONECARD, INC., STI PREPAID, LLC, FIND & FOCUS ABILITIES, INC.,
VOIP ENTERPRISES, INC., TELCO GROUP, INC., and JOHN DOES 1-100.

BRONX COUNTY
COUNTY CLERK
08 FEB 11 PM 2:33

RECEIVED

## SERVICE LIST FOR SUMMONS AND COMPLAINT

### Spira v. CVT Prepaid Solutions, Inc., et al.

CVT Prepaid Solutions, Inc.
40 Cuttermill Road, Suite 500
Great Neck, New York 11021

Dollar Phone Corp., Dollar Phone Services, Inc.,
Dollar Phone Enterprises, Inc. and Dollar Phone Access, Inc.
232 Broadway
Brooklyn, New York 11211

Epana Networks, Inc.
1250 Broadway, 30th Floor
New York, New York 10001

Locus Telecommunications, Inc.
111 Sylvan Avenue
Englewood Cliffs, New Jersey 07632

Total Call International, Inc.
707 Wilshire Boulevard, 12th Floor,
Los Angeles, California 90017

Sti Phonecard, Inc., Sti Prepaid, LLC, Find & Focus Abilities, Inc.
VOIP Enterprises, Inc. and Telco Group, Inc.
30-50 Whitestone Expressway, 4th Floor
Flushing, New York 11354

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**                                                    **DEFENDANTS**

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**    **ATTORNEYS (IF KNOWN)**

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Has this or a similar case been previously filed in SDNY at any time? No ☐  Yes ☐  Judge Previously Assigned

If yes, was this case  Vol.☐  Invol. ☐  Dismissed. No ☐  Yes ☐  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*              NATURE OF SUIT

**ACTIONS UNDER STATUTES**

**TORTS**

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $_____  OTHER _____  JUDGE _____  DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ☐ NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN  x  IN ONE BOX ONLY)*                                  **ORIGIN**

☐ 1 Original
　 Proceeding
☐ 2a. Removed from
　　 State Court
☐ 2b. Removed from State Court
　　 AND at least one party is a pro se litigant
☐ 3 Remanded from
　　 Appellate Court
☐ 4 Reinstated or
　　 Reopened
☐ 5 Transferred from
　　 (Specify District)
☐ 6 Multidistrict
　　 Litigation
☐ 7 Appeal to District
　　 Judge from
　　 Magistrate Judge
　　 Judgment

*(PLACE AN  x  IN ONE BOX ONLY)*          **BASIS OF JURISDICTION**          ***IF DIVERSITY, INDICATE
CITIZENSHIP BELOW.
(28 USC 1332, 1441)***

☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☐ 3 FEDERAL QUESTION
(U.S. NOT A PARTY)    ☐ 4 DIVERSITY

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF DEF |  | PTF DEF |  | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1   [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3   [ ] 3 | INCORPORATED _and_ PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5   [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2   [ ] 2 | INCORPORATED _or_ PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 [ ] 4 | FOREIGN NATION | [ ] 6   [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DEFENDANT(S) ADDRESS UNKNOWN
　　REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:　　THIS ACTION SHOULD BE ASSIGNED TO:　　☐ **WHITE PLAINS**　　☐ **FOLEY SQUARE**
　　　　(DO NOT check either box if this a PRISONER PETITION.)

| DATE | SIGNATURE OF ATTORNEY OF RECORD | ADMITTED TO PRACTICE IN THIS DISTRICT [ ] NO |
|---|---|---|
| RECEIPT # |  | [ ] YES (DATE ADMITTED  Mo. _____  Yr. _____) Attorney Bar Code # |

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

---

ALAIN SPIRA,                                    )
                                                )
                    Plaintiff,                  )
                                                )          CIVIL ACTION NO. 301164-08
            vs.                                 )
                                                )
                                                )
CVT PREPAID SOLUTIONS, INC., DOLLAR             )          CLASS ACTION COMPLAINT AND
PHONE CORP., DOLLAR PHONE SERVICES,             )          DEMAND FOR JURY TRIAL
INC., DOLLAR PHONE ENTERPRISES, INC.,           )
DOLLAR PHONE ACCESS INC., EPANA                 )
NETWORKS, INC., LOCUS                           )
TELECOMMUNICATIONS, INC., TOTAL                 )
CALL INTERNATIONAL, INC., STI                   )
PHONECARD, INC., STI PREPAID, LLC, FIND         )
& FOCUS ABILITIES, INC., VOIP                   )
ENTERPRISES, INC., TELCO GROUP, INC.,           )
and JOHN DOES 1-100,                            )
                                                )
                    Defendants.                 )

---

        Plaintiff, by and through his attorneys, for his complaint against Defendants CVT Prepaid

Solutions, Inc. ("CVT"); Dollar Phone Corp. ("DP Corp."); Dollar Phone Services, Inc. ("DP

Services"); Dollar Phone Enterprises, Inc. ("DP Enterprises"); Dollar Phone Access, Inc. ("DP

Access"); Epana Networks, Inc. ("Epana"); Locus Telecommunications, Inc. ("Locus"); Total

Call International, Inc. ("Total Call"); STi Phonecard, Inc. ("STi Phonecard"); STi Prepaid, LLC

("STi Prepaid"); Find & Focus Abilities, Inc ("F&F"); VOIP Enterprises, Inc. ("VOIP"); Telco

Group, Inc. ("Telco"); and Does 1-100 (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.    This action arises from a massive and systematic scheme by Defendants to deceive, mislead and defraud the class of consumers who purchase prepaid telephone calling cards (the "Class") by knowingly misrepresenting the available number of minutes and the dollar values of the cards as set forth herein.  The Defendants, in violation of state laws prohibiting unfair and deceptive trade practices, have cheated and/or are cheating calling card consumers by not furnishing them with the calling card minutes promised and paid for.  Indeed, in some cases the actual number of minutes available and received is only 20% of the amount represented.

2.    This insidious scheme is particularly abhorrent because it preys, on a repeated basis, on vulnerable segments of the immigrant population, including the Hispanic community, and on transient users who are being denied the opportunity to compare the real value of competing cards when making their purchases.  Indeed, Plaintiff believes that this deceptive practice is causing consumers to lose more than $1 million a day – in other words, to be defrauded each year by hundreds of millions of dollars, and to lose thousands of hours of promised and undelivered talk time.

## INTRODUCTION

3.    Defendants provide prepaid telephone calling card services to consumers throughout the United States, who each year buy more than $2 billion of prepaid calling cards. The cards enable people, many of whom are immigrants, to maintain contact with family and friends by making international calls to their home countries at low cost.  Similarly, the cards permit travelers within the United States to call their homes at costs ostensibly below that otherwise available.

2

4.    The Defendants and the calling card industry are heavy users of various forms of advertising. They also employ voice prompts which inform consumers how many minutes ostensibly remain on the card and are available for the call being placed. Consumers rely on these advertisements and voice prompts to compare cards, purchase subsequent prepaid cards, and recommend cards to family and friends.

5.    Defendants have in the past falsely and misleadingly materially inflated, and/or are presently falsely and misleadingly materially inflating on their store posters, in their voice prompts, and other advertisements, the number of minutes available on the cards. In reality, consumers could not obtain from the cards they have bought the number of minutes that they were promised and that induced them to purchase those cards. Although some Defendants have recently changed their fraudulent practices, they may quickly return to them unless halted by the Court.

6.    Defendants' lies have systematically defrauded purchasers and, unless stopped by this Court, may continue to do so. Specifically:

    (a)    Defendants' consumer fraud has, as demonstrated below, exceeded $1 million dollars a day and hundreds of millions of dollars annually; and

    (b)    Defendants, on average, have delivered only 60% of what they promise.

7.    Consequently, Plaintiff seeks a preliminary and permanent injunction barring Defendants from continuing this massive and systemic fraud, as well as money damages.

## PARTIES AND JURISDICTION

8.    Plaintiff Alain Spira ("Plaintiff") is a resident of the Bronx, New York.

3

9.    Defendant CVT is a Delaware corporation with its principal place of business located at 40 Cuttermill Road, Suite 500, Great Neck, New York 11021.

10.    Defendants DP Corp., DP Services, DP Enterprises and DP Access (collectively "Dollar Phone") are each New York corporations with their principal places of business at 232 Broadway, Brooklyn, New York 11211.

11.    Defendant Epana is a Delaware corporation with its principal place of business located at 1250 Broadway, 30th Floor, New York, New York 10001.

12.    Defendant Locus is a Delaware corporation with its principal place of business located at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

13.    Defendant Total Call is a California corporation with its principal place of business located at 707 Wilshire Boulevard, 12th Floor, Los Angeles, California 90017.

14.    Defendant STi Phonecard is a New York corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York 11354.

15.    Defendant STi Prepaid is a Delaware Limited Liability Corporation with its principal place of business located at 30-50 Whitestone Expressway, Flushing, New York 11354. Sti Prepaid has assumed the assets and liabilities of, and/or is successor to, the following entities: STi Phonecard, Find & Focus, VOIP, and Telco, therefore, STi Prepaid is liable for some or all of the conduct of those entities. Defendants STi Phonecard, Find & Focus, VOIP, Telco and STi Prepaid are collectively referred to herein as "STi."

16.    Defendant F&F is a New York corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York 11354.

4

17.     Defendant VOIP is a Delaware corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York 11354.

18.     Defendant Telco is a Delaware Corporation with its principal place of business located at 30-50 Whitestone Expressway, 4th Floor, Flushing, New York 11354.

19.     On information and belief, Does 1 through 100 are corporate officers and/or directors of the above named Defendants that have personally participated in the wrongful acts more particularly identified below.

20.     Jurisdiction is proper in this Court because Defendants conduct substantial business in this County and throughout the State of New York.

21.     Venue is proper in this County because Plaintiff resides therein and Defendants have received substantial compensation in this County by doing business here and engaged in numerous activities that had an effect in this County.

22.     This is an action for injunctive relief and damages in excess of $15,000.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action pursuant to CPLR §901 individually and as a class action on behalf of the Class. Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. There are thousands of users of Defendants' calling cards located throughout the State of New York and the United States.

5

b.     There are questions of law and fact which are common to the Class, including

inter alia, the following:

  i.     Whether the Defendants, in violation of state laws prohibiting unfair and

deceptive trade practices, have cheated and continue to cheat calling card

consumers by not providing them with the number of calling card minutes

that Defendants promise them in advance of their purchase and use of the

calling cards;

  ii.     Whether Defendants unlawfully retained millions of dollars in profits as a

result of their scheme to provide fewer minutes than those originally

promised for a specific calling card value; and

  iii.     Whether the Class is entitled to injunctive relief or damages as a result of

Defendants' wrongful conduct.

c.     Plaintiff is committed to prosecuting this action and has retained competent

counsel experienced in litigation of this nature. Plaintiff's claims are typical of

the claims of other members of the Class and Plaintiff has the same interests as

the other members of the Class.

d.     Defendants have acted in a manner which affects Plaintiff and all other members

of the Class alike, thereby making appropriate injunctive relief with respect to the

Class as a whole.

6

## FACTS

### The Parties

25.    Plaintiff purchased the calling cards of one or more of the Defendants, was induced to do so by the deceptive practices of the Defendants and has suffered injury as a result.

26.    Upon information and belief, CVT is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York, and further engaged and may continue to engage in the deceptive practices complained of herein.

27.    Upon information and belief, Does 1-10 are officers, employees and/or agents of CVT and actively participated in the creation of and/or approved the false and deceptive practice engaged in by CVT and at issue herein.

28.    Upon information and belief, Dollar Phone is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York, and further engaged in the deceptive practices complained of herein.  The Dollar Phone Defendants acted in concert with each other to create, disseminate and distribute the Dollar Phone prepaid telephone calling cards and engaged and will continue to engage in the deceptive practices at issue herein.

29.    Upon information and belief, Does 11-20 are officers, employees and/or agents of Dollar Phone and actively participated in the creation of and/or approved the deceptive practices engaged in by Dollar Phone at issue herein.

30.    Upon information and belief, Epana is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York, and further engaged and may continue to engage in the deceptive practices complained of herein.

7

31.    Upon information and belief, Does 21-30 are officers, employees and/or agents of Epana and have actively participated in the creation of and/or approved the false and deceptive practices at issue herein.

32.    Upon information and belief, Locus is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York under its own name and under the names GEO Telecom, Locus Mobile, UNI, CallPlus and CallPlus Global, and further engaged and may continue to engage in the deceptive practices complained of herein.

33.    Upon information and belief, Does 31-40 are officers, employees and/or agents of Locus and have actively participated in the creation of and/or approved the false and deceptive practices at issue herein.

34.    Upon information and belief, Total Call is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York, and further engaged and may continue to engage in the deceptive practices complained of herein.

35.    Upon information and belief, Does 41-50 are officers, employees and/or agents of Total Call and have actively participated in the creation of and/or approved the false and deceptive practices at issue herein.

36.    Upon information and belief, STi is in the business of servicing, manufacturing and/or distributing prepaid telephone calling cards in the State of New York. The STi defendants acted in concert with each other to engage and may continue to engage in the deceptive practices complained of herein.

8

37.    Upon information and belief, Does 51-60 are officers, employees and/or agents of the STi defendants and have actively participated in the creation of and/or approved the false and deceptive practices complained of and at issue herein.

38.    This case involves a $1 million a day fraud, perpetrated on consumers by Defendants' use of false and deceptive practices in the creation, manufacture, dissemination and/or distribution of their respective prepaid calling cards.

**Defendants' Prepaid Calling Card Business**

39.    Defendants supply the telecommunications services offered via their calling cards by routing their traffic over networks of major communication companies, or local and international carriers of comparable quality, to ensure quality in the communication. Defendants' calling cards are sold in denominations of $2, $3, $5, $10, and $20, with the $2, $3, and $5 denominations being most popular.

40.    Defendants' calling cards are sold nationwide in retail outlets and over the internet. They are marketed under various brand names.

**The Prepaid Calling Card Industry**

41.    The purchaser of a prepaid telephone calling card actually buys access to time increments of long distance telephone access via a fully automated computer system, commonly referred to in the industry as a "platform." The platform processes various relevant data points, including the value of the prepaid calling card, the telephone rate table in effect, the origin of the caller, and the destination of the call, allowing the company to determine, and then inform the consumer, as to the amount of time he or she has available for the call. Typically, the prepaid telephone calling card has a local or toll-free telephone access number for its users to utilize to

9

place a long distance call. Once the consumer dials the local access or toll-free number, he or she

is prompted by the platform to enter a personal identification number ("PIN") found on the back

of the card. After the platform verifies the PIN, the consumer is then granted access to the long

distance services he or she purchased. The consumer is subsequently prompted by the platform

to enter the destination telephone number he or she wishes to be connected with.

42.    After the consumer enters the destination number, a voice prompt states the

number of minutes available for the call, e.g.: "You have 42 minutes for this call." This voice

prompt is generated by the platform. The voice prompt is the most important source of

information available to the consumer concerning the number of minutes a card provides for a

call as it provides the consumer with the most up-to-date information. Consumers rely on the

information provided on the voice prompts to compare cards, purchase subsequent prepaid cards,

and recommend cards to family and friends. The vast majority of regular calling card users make

purchase decisions based upon their past experience with the cards and upon recommendations

from other users.

43.    The number of minutes thought to be available on a card is a primary factor in

most prepaid calling card consumers' purchasing decisions. In fact, a 2003 independent survey

commissioned by IDT Telecom, Inc. and Union Telecard Alliance, LLC (collectively ("IDT"),

competitors of the Defendants and the plaintiffs in an action filed in the United States District

Court for the District of New Jersey under the caption IDT Telecom, Inc. et ano. v. CVT Prepaid

Solutions, Inc., et al., No. 07-1076 (SDW)(MCA) (the "New Jersey Litigation"), confirmed that

61% of purchasers said the most minutes for the cost was one of the most important factors in

10

their purchasing decision and 57% said that most minutes for the cost was the most important factor.

44.    Once the consumer has exhausted the increments of long distance telephone services purchased, the PIN ceases to provide access to such telecommunications services. The number of minutes of talk time that are delivered for a specific call is based on the location that is being called, and is calculated by including all applicable fees and charges.

45.    Defendants have committed substantial sums for advertising and promotion of their calling cards in 2006. Advertising and promotion for the cards includes point of sale posters, radio, television and Internet, as well as the "voice prompts" that customers hear when they use the cards.

46.    Defendants continually provide hundreds of thousands of posters to all of their distributors, which purport to identify the potential minutes that can be obtained if the card is used to call a specific destination. In addition, Defendants sometimes provide posters that show both the minutes and the rates.

47.    It is common industry practice to purport to offer a highly competitive rate when a card is first released and promote that rate on the poster along with the corresponding number of minutes of call time.

48.    Defendants also promote their calling cards with the "voice prompts" that consumers hear when they use the cards. The voice prompts purport to state how many minutes of use are available when a call is placed to a specific location.

11

49.    As previously mentioned, consumers are focused on the rates offered by the various calling card alternatives such that the rate is a key factor that consumers take into account in selecting a calling card.

50.    In fact, consumers believe that the minutes prompted at the beginning of a call are the key source of information for consumers to determine which cards are offering the best rates. Consumers not only rely on the prompt to determine how much calling time is on the purchased card, consumers also rely on the prompt to plan their next calling card purchase.

51.    Members of the Class rely upon calling cards because they purport to provide low cost telecommunication services for persons who need to make long distance and international calls. As an example, persons having recently emigrated to the United States often have communication needs with family and friends from their home country. Because these groups of people tend to be heavy users of international long distance, Defendants actively market their calling cards to them, among others. Some of the most frequent destination countries for immigrants using calling cards to communicate with their loved ones are the Dominican Republic, Guatemala, Mexico, El Salvador, Colombia, Nicaragua, Ecuador, Haiti, Honduras and Peru.

52.    A large percentage of consumers use the entire balance (amount of minutes) of the calling card on their first call.

53.    However, as detailed below, Defendants' cards virtually never provide the minutes advertised to consumers on their posters and voice prompts. Indeed, IDT's internal testing in the New Jersey Litigation showed that the vast majority of Defendants' cards tested delivered substantially fewer minutes than promised on the voice prompts. As discussed below,

12

IDT's internal testing demonstrated that Defendants systematically lie to consumers about the minutes promised on their posters and voice prompts. According to IDT's testing, Defendants, on average, have provided only approximately 60% of the minutes promised on their posters and voice prompts, thereby injuring consumers on virtually each and every calling card purchase. To make matters worse, Defendants' information services regularly direct customers to listen to the voice prompts when questioned by consumers for information about their company's prepaid calling cards.

54.     This systemic under-delivery of minutes by Defendants has occurred only because Defendants have engaged in deceptive business practices by disseminating posters laden with inflated minutes for the calling cards being peddled by them and by deliberately manipulating their computer hardware and software to falsely inflate the represented number of minutes delivered to the customer.

**IDT's Discovery of Defendants' Consumer Fraud**

55.     According to the allegations made in the Amended Complaint filed by IDT in the New Jersey Litigation, in the summer of 2006 IDT became aware that its major competitors were promising consumers an incredibly large number of minutes at very low rates. These rates were far more aggressive than rates offered by IDT's competitors in the past. Over the next several months, IDT explored various theories to determine how Defendants were offering such ultra-competitive rates. By the end of November 2006, IDT had fallen short in explaining Defendants' unprecedented high promises of minutes and corresponding low rates.

56.     In December 2006, IDT tested a competitor's prepaid calling card that was offering very aggressive promises of high minutes and low rates. On prior occasions, IDT had

13

partially tested competitors' promises of minutes on cards and posters by making calls on the cards, seeing what minutes were prompted for particular destinations, and then simply hanging up after hearing the prompts confirm the posters and advertising. On this occasion, departing from earlier tests, IDT used all the minutes on the card on a single call and discovered that the actual minutes delivered on the call were significantly less than the minutes prompted.

57.    At that time, IDT first suspected that some of the Defendants were flat out lying to consumers about the minutes their cards could deliver. Over the next few weeks, IDT conducted several tests of defendant STi's cards that confirmed that the minutes provided to the consumer were actually substantially less than what was being promised on the voice prompt.

58.    In early 2007, IDT decided to institute large scale internal testing of Defendants' cards to verify the consumer fraud. IDT established dedicated phone lines, and began the process of obtaining a large volume of phone numbers in various countries from the appropriate primary telecommunications provider in each country. These numbers would be necessary to test Defendants' cards.

59.    In and around the weeks of January 22 and 29, 2007, IDT obtained, for internal testing, various cards from the following Defendants: CVT, Epana, Dollar Phone, Locus, STi, and Total Call.

60.    In addition, IDT obtained multiple new defendant cards as soon as they became available. At around this time, IDT also obtained the phone numbers from the primary telecommunications providers necessary to begin testing these calling cards.

14

**IDT's Internal Testing Confirms Defendants' False And Deceptive Practices**

61.    On or about February 5, 2007, IDT began internal testing of Defendants' cards. For the majority of their internal testing, IDT used dedicated PBX service lines at their New Jersey office equipped with call detail recording capabilities. IDT made additional test calls from their New York office as well. Using the access numbers and PINS on the cards collected, IDT personnel made calls from their offices in New Jersey and New York to several of the most popular prepaid calling card destinations.

62.    At the beginning of each call, the prompts were listened to and inputted by IDT testing personnel into the database and the tester remained on the line until the card was depleted of minutes (or otherwise disconnected). Concomitant with the test call, each tester either (i) manually entered all the relevant date, time, card, and prompt information into a spreadsheet or (ii) provided other employees with such information. IDT then compiled all of the data into the central internal testing database. For the test calls made from the New Jersey office, IDT has additional PBX records to backup the date and time of the call, the number dialed and the length of the call.

63.    Between February 5, 2007 and March 1, 2007, IDT tested more than 150 of Defendants' cards with access numbers from across the United States. According to the Amended Complaint in the New Jersey Litigation, the results of the testing were as follows:

64.    At the time of the testing, defendant CVT's standard prompt stated "You have X Minutes for this call." CVT's cards delivered an average of 55% of the minutes their cards promised in their voice prompts. IDT tested seven different CVT prepaid calling cards to four locations.

15

65.    At the time of the testing, defendant Dollar Phone's standard prompt stated "Your current balance will allow you to talk for X minutes." Dollar Phone's new prompt states "You have two hours eighteen seconds before deduction of applicable fees and charges as listed on the back of your card and poster." Dollar Phone's cards deliver an average of 62% of the minutes their cards promised in their voice prompts. IDT tested eight different Dollar Phone prepaid calling cards to four locations.

66.    At the time of the testing, defendant Epana's standard prompt stated "You have X Minutes available for this call." Defendant Epana's cards delivered an average of approximately 55% of the minutes their cards promised in their voice prompts. IDT tested ten different Epana prepaid calling cards to seven locations.

67.    At the time of the testing, defendant Locus' standard prompt stated "You have X minutes remaining." Locus' cards delivered an average of approximately 55% of the minutes their cards promised in their voice prompts. IDT tested thirteen different Locus prepaid calling cards to seven locations.

68.    At the time of the testing, defendant STi's standard prompt stated "You have X Minutes." STi's cards delivered an average of 70% of the minutes their cards promised in their voice prompts. IDT tested 19 different STi prepaid calling cards to six different locations.

69.    At the time of the testing, defendant Total Call's standard prompt stated "Your current balance will allow you to talk for X minutes." Total Call's cards delivered an average of 60% of the minutes their cards promised in their voice prompts. IDT tested four different Total Call prepaid calling cards to five different locations.

16

70.    Based on IDT's internal testing, Defendants' cards delivered an average of approximately 60% of the minutes promised on their voice prompts when the card was used in one call.

71.    By contrast, IDT's cards delivered 100% of the minutes promised on their voice prompts when the card was used in one call.

72.    In many instances, Defendants promised the same number of minutes on their poster and their voice prompt yet delivered less than 65% of the minutes promised. For example:

(a)    Defendant CVT's *CVT Texas* card, PIN 050-934-9007, promised 60 minutes on the poster and the voice prompt for a call to Haiti, yet only delivered 30 minutes, 50% of the time promised.

(b)    Defendant Dollar Phone's *Langosta* card; PIN 6121-65 1-7198, promised 120 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 50 minutes, 42% of the time promised.

(c)    Defendant Epana's *Te Cuenta* card, PIN 5380-6575-123, promised 65 minutes on the poster and the voice prompt for a call to Guatemala, yet only delivered 24 minutes, 37% of the time promised.

(d)    Defendant Locus's *Hot Dog* card; PIN 371-442-0419, promised 100 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 57 minutes, 57% of the time promised.

(e)    Defendant Locus's *Speedy Call Carribean* card, PIN 428-791-4893, promised 112 minutes on the poster and the voice prompt for a call to the Dominican Republic, yet only delivered 22 minutes, 20% of the time promised.

(f)    Defendant STi's *Mass* (Blue) card, PIN 6801-269-7057, promised 46 minutes on the poster and the voice prompt for a call to El Salvador, yet only delivered 29 minutes, 63% of the time promised.

73.    According to the Amended Complaint in the New Jersey Litigation, Defendants' actual delivered minutes were virtually always less than advertised on their posters and voice prompts. In several instances, where IDT tested a card close in time to the date when a

17

Defendant issued a new card and new poster, they confirmed that the Defendants' poster and voice prompt were promising false rates from the very beginning. For instance, IDT tested Defendant Dollar Phone's Moto Concho card on February 23, 2006. Moto Concho, PIN 453-0225-567, promised 125 minutes on the poster and the voice prompt for a call to the Dominican Republic and only delivered 68 minutes, 54% of the minutes promised.

74.    Defendants' advertising on radio, television and the Internet is similarly deceptively false and misleading. For example, Defendant Locus's *Hot Dog* $2 card radio advertisements promised 100 minutes to the Dominican Republic. The poster and voice prompt also promised 100 minutes. However, the card only delivered 43 minutes, 43% of the time provided, according to IDT's test results. Defendant Locus's *Hot Dog* $2 card radio advertisements also promised 50 minutes to Guatemala. The poster and prompts promised 49 minutes. However, the card only delivered 22 minutes according to IDT's test results.

75.    Moreover, according to the documents filed in the New Jersey Litigation, on many occasions Defendants' intentionally manipulated minutes to be delivered to consumers in order to reduce the costs associated with delivering fewer minutes and give their product a surge in the market place. For example, in an email exchange between a representative of defendant CVT and one of its distributors, the CVT representative tells the distributor that he has no problem increasing the poster minutes for calls to the Dominican Republic but needs to keep the delivered minutes the same. The distributor agreed with this arrangement. Obviously, this arrangement was never communicated to the public.

**Independent Testing Confirms Defendants' False and Deceptive Practices**

76.    According to the Amended Complaint in the New Jersey Litigation, in February 2007, IDT retained an independent investigator, The Accetta Group, LLC ("TAG"), to develop a protocol for the blind testing of Defendants' and IDT's cards.

77.    IDT supplied TAG with the cards to be tested and, at least initially, the destinations to be called. IDT sent TAG PINS for the same cards that they internally tested and included IDT cards for TAG to blindly test. TAG's results confirm Defendants' widespread deception.

78.    Defendants' cards did not contain any disclaimer that the minutes promised on the poster and the voice prompt are virtually never delivered to the consumer. Some cards are wholly silent on this issue. A card for one Defendant STi, offers the following: "Application of surcharges and fees will have the effect of reducing total minutes actually received on the card from the minutes announced." This underscores STi's purposeful misrepresentation of their unlawful practices.

79.    Similarly, a card for Defendant Dollar Phone offers the following misleading disclosure: "Prompted minutes are before applicable charges and fees, application of surcharges and fees have an effect of reducing total minutes on cards. One or all of the following may apply: 1) A weekly maintenance fee ranging between .49 and .79. 2) A hang-up fee ranging between .05 and $1 depending upon length and destination of the call. 3) A destination surcharge of between 0% and 100%.".

80.    Indeed, none of the Defendants' disclosures clarifies that their cards virtually never deliver the number of minutes promised on the posters and in their voice prompts.

19

81. The prepaid calling card industry generates approximately over $2 billion in annual retail sales. Upon information and belief, Defendants generate approximately $1 billion of sales per year.

82. As stated above, Defendants are depriving consumers of approximately 40% of the minutes promised on their calling card prompts. Defendants are therefore deceiving consumers of approximately an estimated $400 million per year, or stated another way, over $1 million a day. This fraud is still ongoing and damaging parts of this country's most vulnerable population, the members of the Class.

**Defendants' Consumer Fraud Has Irreparably Harmed Plaintiff**

83. Defendants' consumer fraud has caused and/or is causing Plaintiff and the Class irreparable harm by causing them to lose thousands of undelivered minutes of call time promised to them by Defendants through deceptive advertising, including point of purchase posters, television advertisements, radio advertisements, packaging and voice prompts ("Defendants Advertising").

84. To the extent that certain defendants changed their practices under pressure from several lawsuits, including the New Jersey Litigation, they may quickly revert to their old practices, unless halted by the Court.

85. Defendants Advertising is false, misleading and deceptive because the minutes actually delivered to consumers by Defendants were and/or are significantly less than those marketed in the Defendants Advertising.

86. In addition, due to Defendants' consumer fraud, Plaintiff and the Class have irretrievably lost millions of dollars. Plaintiff and the Class will have great difficulty in seeking

20

the return of their overpayments because the calling cards are purchased anonymously, without registration or recordation of personal information of the buyer, and the cards are discarded after use. Thus, the Defendants have insulated their scheme of wrongdoing from full accountability to the Class.

87.    Defendants' consumer fraud also causes irreparable harm to Plaintiff and the Class, because they will never be able to regain the intangible loss in calling time they have already suffered and will be even more irreparably harmed if Defendants' fraud is not halted immediately.

## COUNT I

### Deceptive Acts Under § 349 Of The General Business Law Of New York

88.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1 through 87 as if fully set forth herein.

89.    Defendants' false and deceptive advertising, as set forth above, is a deceptive practice in the conduct of their respective prepaid calling card businesses, in violation of Section 349 of the General Business Law of New York.

90.    Defendants' false and deceptive advertising has already materially misled and is likely to materially mislead consumers in the future with respect to the number of minutes they receive for the price they pay.

91.    Defendants' acts of false and deceptive advertising described herein were intended to cause and have caused deception of the public, materially misleading Plaintiff, prospective purchasers and members of the Class as to the true characteristics and qualities of Defendants' products.

21

92.    Plaintiff and the Class are without an adequate remedy at law.

93.    As a result of Defendants' acts as alleged above, consumers of the State of New York and throughout the country have been materially deceived and misled.

94.    As a result of Defendants' acts as alleged above, Plaintiff and the Class have suffered and will continue to suffer irreparable harm in the form of damage and injury that will not be fully compensable by money damages, and will continue to be so harmed unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT II

### False Advertising Under § 350 Of The General Business Law Of New York

95.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1 through 94 as if fully set forth herein.

96.    Consumers rely upon Defendants' advertising in the form of posters, broadcast ads and voice prompts in purchasing Defendants' products.

97.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with their respective prepaid calling card businesses, in violation of Section 350 of the General Business Law of New York.

98.    Defendants' false and deceptive advertising has already materially misled and is likely to materially mislead consumers in the future with respect to the number of minutes they receive for the price they pay.

22

99.    Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, materially misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

100.    Plaintiff and the Class are without an adequate remedy at law.

101.    On information and belief, as a result of Defendants' acts as alleged above, consumers of the State of New York and throughout the country have been materially deceived and misled.

102.    As a result of Defendants' acts as alleged above, Plaintiff and the Class have suffered and will continue to suffer irreparable harm in the form of damage and injury that will not be fully compensable by money damages and will continue to be so harmed unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT III

### Breach of Contract

103.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1 through 102 as if fully set forth herein.

104.    Defendants are parties to contracts with Plaintiff and the Class under which Defendants agreed to abide by the terms of its contract with the Class, and to fully disclose all relevant information concerning the terms and conditions under which Defendants promised to allocate a certain number of minutes to Plaintiff in exchange for a calling card value.

105.    Defendants breached the contract by failing to timely inform Plaintiff and the Class that the minutes actually delivered to consumers by Defendants are significantly less than

23

those marketed in the Defendants Advertising and the minutes that Plaintiff believed he had actually purchased. Plaintiff and the Class have been injured by virtue of this breach.

## COUNT IV

### Common Law Fraud and Deceit

106.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1 through 105 as if fully set forth herein.

107.    Defendants Advertising was misleading or likely to mislead because Defendants concealed the fact that the they would not provide the same number of minutes to Plaintiff and the Class as was promised to them by the Defendants Advertising. The false representations by the Defendants further hurt the Plaintiff in that he cannot compare the real value of competing calling cards when the minutes promised are not the minutes delivered.

108.    Defendants' representations regarding the number of minutes to be provided to consumers were made with knowledge of, or reckless disregard for, the laws of this state prohibiting false statements, as well as the reasonable expectations of consumers, including Plaintiff and the Class members, that Defendants would disclose the true nature of their calling card practices. Such representations were made with the intent to defraud and induce Plaintiff and Class members' reliance, and in fact did so, as evidenced by Plaintiff's purchase of Defendants' calling cards.

109.    Plaintiff and the other members of the Class, unaware of the falsity of Defendants' fraudulent representations and/or concealment and suppression of said material facts, purchased Defendants' calling cards, reasonably relying upon the representations of Defendants. Had Plaintiff and other members of the Class known of the suppressed and

24

concealed facts as alleged herein, they would not have purchased certain calling cards that they did or would have been better informed to chose a calling card that would provide them the most minutes to call their specific destination for the lowest price possible.

110.    As a proximate result of Defendants' active misrepresentations and/or concealment of material facts as detailed above, Plaintiff and the other Class members have suffered damages. The total amount of damages suffered by Plaintiff and other members of the Class as a result of the unlawful and fraudulent acts of defendant cannot be fully ascertained without access to Defendants' records and may be entirely unascertainable.

## COUNT V

### Unjust Enrichment and Constructive Trust

111.    Plaintiff repeats and realleges the allegations set forth above in paragraphs 1 through 110 as if fully set forth herein.

112.    By their wrongful acts of false and deceptive advertising described herein, Defendants were unjustly enriched and continue to be unjustly enriched at the expense of and to the detriment of Plaintiff and the Class.

113.    Plaintiff seeks restitution from these Defendants and seeks an order of this Court disgorging all profits obtained, at the expense of the members of the Class as detailed above by these Defendants from their wrongful conduct, and a constructive trust should be imposed on all revenues thus far obtained by Defendants as a result of their deceptive practices to prevent the dissemination, transfer and/or concealment of such funds beyond the jurisdiction of this Court.

114.    Plaintiff and the Class are without an adequate remedy at law.

25

## RELIEF SOUGHT

WHEREFORE, Plaintiff asks this Court to:

115.    Declare that the Defendants committed deceptive acts or practices in violation of § 349 and 350 of the N.Y. General Business Law;

116.    Declare that the Defendants committed common law fraud and deceit and breached their contracts with Plaintiff;

117.    Grant a preliminary injunction and thereafter a permanent injunction, subject to and in conformity with the terms of settlements entered into in the New Jersey litigation between IDT and Defendants Dollar, Epana, Locus and Total Call, restraining and enjoining Defendants and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of Defendants, and all those in privity, concert or participation with Defendants, from:

> (i)    using any false or misleading description that can or is likely to misrepresent to the trade or public, or individual members thereof, the characteristics or qualities of any product or service advertised, promoted, offered or sold by Defendants, including but not limited to descriptions on or in point of purchase advertising, television commercials, radio commercials, print advertising and voice prompts during the long distance access process;

> (ii)    destroying or otherwise disposing of any of the hereinabove mentioned advertising, or any documents pertaining to such advertising or to any sales of products heretofore made;

26

(iii)    assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (ii) above.

118.    Find that Defendants have competed unfairly under New York law, and have damaged Plaintiff by the acts complained of herein.

119.    Issue an order requiring recall of all false advertising distributed and requiring Defendants to issue notices (written or otherwise) to all current distributors of their products and all distributors with whom they have done business in the past twelve months.

120.    Direct Defendants to file with this Court and serve on counsel for Plaintiff, within thirty (30) days after entry of the Preliminary Injunction, a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

121.    Find Defendants liable and award to Plaintiff monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by Plaintiff and the Class, and/or all of Defendants' profits or gains of any kind resulting from their unlawful practices.

122.    Order an accounting and render judgment against Defendants for all profits wrongfully derived by Defendants by reason of their false statements and representations and unfair competition.

123.    Award all damages to compensate Plaintiff for Defendants' acts of false statements and representations and unfair competition.

124.    Require Defendants to pay Plaintiff prejudgment and post- judgment interest at the applicable rates on all amounts awarded.

27

125.    Require Defendants to disseminate corrective advertising, at Defendants' expense, that informs consumers, the trade and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay Plaintiff's costs in producing and disseminating such corrective advertising.

126.    Certifying this action as a class action and certifying the Plaintiff as Class representative;

127.    Grant to Plaintiff such other and further relief as the Court may deem just, proper and equitable under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by Jury of all claims so triable.

Dated: February 11, 2008

WEISS & LURIE

Joseph H. Weiss
Mark D. Smilow
Ilya Nuzov
551 Fifth Avenue
New York, New York 10176
(212) 682-3025
(212) 682-3010 (Fax)

*Plaintiff's Counsel*

28